Mr. Justice.
Cox delivered the opinion of the court.
To state this case in full would require me to read the voluminous petition of the relator, and the equally voluminous return of the Secretary of State, which I think it is not necessary to do. It is sufficient to say, in general terms, that the relator in his petition sets forth the fact that cer *301 tain conventions were concluded between the United States and Mexico, providing for the determination of claims of ■citizens of each republic against the other ; that in pursuance ■of that convention, a board of commissioners assembled in Washington to adjudicate these claims, and in the course of their proceedings made an award in favor of Benjamin Weil for a large sum of money, the petitioner being an assignee of Benjamin Weil for a small portion of that award. He sets forth, further, that the act of June 7, 1878, required the money paid by Mexico on these claims to be deposited in the hands of the Secretary of State, and made it his duty to pay it out to the parties named in those awards, or their assignees ; and that the Secretary, in pursuance of that act of Congress, had paid out all the installments that had been received from Mexico, except one, then in his hands, which he declined to pay, and he asks the mandamus of this court to require him to disburse the money. After argument on the face of the petition, as upon demurrer to it, the court issued an alternative mandamus, and to that the Secretary has made a return. That return was demurred to, and that ■demurrer was argued before us at the close of last week. The ground taken by the Secretary will be manifested as I proceed.
The first section of the act of Congress of June 18, 1878, provides:
“ That the Secretary of State be, and he is hereby, authorized and required to receive any and all money which may be paid by the Mexican Republic under and in pursuance of the conventions between the United States and the Mexican Republic for the adjustment of claims, concluded July 4, 1868, and April 29, 1876; and whenever, and as often as any installments shall have been paid by the Mexican Republic, on account of said awards, to distribute the moneys so received in rateable proportions among the corporations, companies or private individuals respectively, in ■whose favor awards have been made by said commissioners, or by the umpires, or to their legal representatives or assigns.”
If the act had stopped here, there would be a plain minis *302 terial duty created by it for the benefit of the parties in whose favor the awards were made, admitting of no exercise of discretion and proper to be enforced by mandamus if its performance was refused.
But the language in question is followed by the terms, “ except as in this act otherwise limited and provided.” And we are referred to the 5th section for the exceptions or limitations to the duty enjoined in the first.
This enacts, “that the President of the United States be, and he is hereby, requested to investigate any charges of fraud presented by the Mexican government as to the cases hereinafter named, and if he shall be of opinion that the honor of the United States, the principles of public law, or considerations of justice and equity, require that the awards in the cases of Benjamin Weil and La Abra Silver Mining Company, or either of them, should be opened and the cases retried, it shall be lawful for him to withhold payment of said awards, or either of them, until such cases shall be retried and decided in such manner as the governments of the United States and Mexico may agree, or until Congress shall otherwise direct.”
It is obvious that the power to withhold the payment of the awards is given on a condition, to wit, if the President shall be of opinion that the honor of the United States, the principles of public law or considerations of justice and equity require that the awards shall be opened and retried. If the President should not be of that opinion, no power is given to withhold payment, but the cases lie outside of the exception and fall within the general injunction of the first section.
The case further shows that President Hayes, through Mr. Evarts, Secretary of State, did investigate the charges- of fraud presented by the Mexican government, as to the cases above named, in compliance with the act of Congress, and on the 15th of April, 1880, communicated to Congress, as the result of that investigation, the opinion of Mr. Evarts, in which the latter says :
“I conclude, therefore, that neither the principles of public law nor considerations of justice or equity requireor *303 permit, as between the United States and Mexico, that the awards in these cases should be opened and the cases retried before a new international tribunal, or under any new convention or negotiation respecting the same between the United States and Mexico.”
Ve take it for granted that in transmitting this opinion to. Congress as the action of the executive, taken in pursuance of the act of Congress, the President is to be considered as adopting this opinion of the Secretary and communicating it as his own.
In addition to the above, he does, indeed, say that the honor of the United States, in his opinion, requires that these cases be investigated by the United States. But this was not provided for by the act of June 18, 1878, nor was such an opinion made a condition of the power, or declared to be the ground of any authority to withhold the awards. The condition expressed was the opinion of the President that the awards, i. e., the judgments, as between the United States and Mexico, should be opened and the eases, i. e., as international cases, be retried, i. e., tried again, tried as before by an international tribunal. This is further manifest from the fact that payment was to be withheld until the cases should be retried and decided in such manner as the United States and Mexico might agree, or until Congress should otherwise direct. In other words, if the President should think the cases ought to be retried, the awards were to be withheld for another international trial, not a Congressional investigation, or until Congress should direct otherwise, i. e., that they should not be so withheld.
It must be apparent, then, that so far the condition had not happened which, under the 5th section of the act of June 15, 1878, would warrant the Secretary of State in withholding payment of the awards, and in the absence of any subsequent legislation, modifying that act, “ it would,” in the language of Mr. Evarts, “ appear to be the duty of the executive to accept these awards as no longer open to reconsideration, and proceed with payment of the same pro rata with all other awards under the convention.”
*304 But the question is made whether the power conferred by the 5th section of the act of June, 1878, was exhausted by President Hayes’ exercise of it, or, on the contrary, was a continuing or recurring power which may be exercised by any succeeding President, i. e., whether any such President may ré-iinvestigate the subject, and if he should be of a different •opinion from President Hayes, may withhold payment of the instalments yet undistributed.
It will be remembered that the grant of this power is prefaced by a request to the President to investigate the charges of fraud. If he (who is thus requested) shall be of opinion, ■&c., &c., it shall be lawful for him to withhold payment, &c.
The duty devolved and the power conferred refer to the same person.
The request was obviously addressed to the existing President, and when he made the investigation and announced the result, this request was satisfied. It cannot be considered .a continuing and reiterated request to each succeeding President to re-examine the subject, and consequently the power to withhold the payment of the awards which was to result from that examination must be deemed equally limited.
These considerations furnish an answer to one of the positions taken in the return of the Secretary.
The principal and most important ground assigned by the 'Secretary for withholding payment, is the fact that the President has negotiated a treaty with Mexico for the opening of the awards, which is now pending before the Senate for ratification, having been submitted to that body, it is •said, during the first session of the Congress just expired.
In answer to this, it is denied . by the claimant that the United States has any power, by a new treaty, to disturb the •awards in question. It is argued that they confer vested rights on the claimant which he cannot be constitutionally •deprived of either by a law or a treaty.
We do not deem it necessary to express any opinion on this question, because it is not involved in the issue before ■us. That issue is, whether a ministerial duty is devolved by law on the Secretary of State, to pay this money, which we *305 are to enforce by mandamus. Neither the claims convention, under which the awards were made, nor the awards themselves, imposed any such duty or contained any provision as to the person by whom, or the manner in which, the money awarded should be disbursed. Legislation -was necessary for that object, and that legislation is found in the act of June, 1878. Congress might have enacted a different law. It can undpubtedly repeal ihat law and enact a different mode of distribution, or leave the claimants just -where they were before the act was passed. And if that had been done, the Secretary of State would be relieved of the duty of distribution, and we could not charge him with it. But this would not affect the question whether the awards themselves could be set aside by a new convention. And whether that could be lawfully done or not, yet if such a treaty should be made, it would be a law, at least so far as it would admittedly be within the" constitutional power of the Government. It-would at least be valid so far as to repeal the act of June, 1878, providing for a distribution of this money. If the United States could do this much by an act of Congress, it could equally do it by a treaty inconsistent with the existing law, for such a treaty has the force of law under the Constitution. But whether the citizen could still insist on the award as his property, and call on Congress to pay him in some other way, is an entirely different question, and one which we are not called on to decide.
The question remains, what effect has this pending treaty on the rights of the claimant under the act of 1878 ?
By the Constitution it is declared, that all treaties,made under the authority of the United States shall be the supreme law of the land.
But a treaty only becomes the law of the land when it is made and completed. The President has no power to make treaties except by and with the advice and consent of the Senate, and with the concurrence of two-thirds of its members present. Until those conditions concur, a treaty negotiated is no more the law of the land than a bill introduced into one of the Houses of Congress, but not yet acted *306 on by either. Not being yet law, it is wholly inoperative to affect antecedent laws or the i’ights acquired under them. It furnishes no more excuse for disobedience to an existing law than would the pendency in Congress of a bill to repeal it. It is manifest, therefore, that the pendency of this treaty is no legal bar to the claimant’s assertion of his rights under the act of 1878.
We have been embarrassed in this case by the appeal to the courtesy of the court, which, it is said, is due to a coordinate branch of the Government, It is said that the issuing of a mandamus is within the discretion of the court. And it is said that if Congress had been in session when this application was made, and a bill were-pending to repeal the existing law, the court would hardly interpose by its mandamus ; and that the same should be the case where a treaty is before the Senate. If Congress were in session at this "time, and any such law or treaty were pending before it, we should hesitate a long time before anticipating its action, and perhaps feel absolutely constrained to await the final action of Congress or the Senate, as the case might be. But this treaty was submitted during the first session of the Congress which has just expired ; it has been before the Senate two sessions of that Congress, and has not yet been ratified. It cannot even be considered again for a period of nine months ; that is, until another session of Congress. We are told that to the Almighty a thousand years are a one day, and one day as a thousand years ; and something similar to that may be said of governments. To the Government, years and days are about alike ,• it loses nothing by delay. But that cannot be said of the private citizen. Delay to him is often ruinous, and to withhold his remedies for one or two years is to deny him justice, and to do so out of courtesy to a co-ordinate branch of the Government is to make that an excuse for positive injustice. We think, under the circumstances of this case, we are no longer at liberty to withhold the writ applied for, and that the writ of mandamus must issue.